Michael McKay (023354)
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 170
Scottsdale, Arizona 85250
Telephone: (480) 681-7000
Facsimile: (480) 348-3999
Email: mmckay@mckaylaw.us

Marc H. Edelson (*pro hac vice*)
Eric Lechtzin (*pro hac vice*)
**EDELSON LECHTZIN, LLP**
411 S. State Street, Suite N-300
Newtown, Pennsylvania 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
Email: medelson@edelson-law.com
Email: elechtzin@edelson-law.com

*Class Counsel*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Samantha Gotta and Michael De Sena, individually and on behalf of the Stantec 401(k) Plan,<br><br>    Plaintiffs,<br><br>       vs.<br><br>Stantec Consulting Services, Inc.; The Board of Directors of Stantec Consulting Services, Inc.; Stantec Consulting Services, Inc. Fiduciary Investment Committee; and John Does 1-30,<br><br>    Defendants. | Case No.: 2:20-cv-01865-GMS<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES, AND CLASS CONTRIBUTION AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

# **<u>TABLE OF CONTENTS</u>**

MOTION ........................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.    INTRODUCTION ...................................................................... 1

II.   BACKGROUND ......................................................................... 1

     A.    The Settlement ..................................................................... 3

          1.    The Settlement and Released Claims ...................................... 3

          2.    Distribution of Funds to Class Members ............................... 3

     B.    Preliminary Approval of Class Notice .................................... 4

     C.    The Settlement and Related Applications Are Being Reviewed and Authorized by an Independent Fiduciary on Behalf of the Plan .................. 5

III.  THE SETTLEMENT MERITS FINAL APPROVAL ........................... 6

     A.    The Settlement is Fair, Reasonable, and Adequate ..................... 6

          1.    The Strength of Plaintiffs' Case and the Risk, Expense, and Complexity of Further Litigation ......................................... 7

          2.    The Settlement Recovery ...................................................... 8

          3.    The Stage of Proceedings and Extent of Discovery Completed .......... 9

          4.    The Experience and Views of Counsel .................................... 9

          5.    The Reaction of Class Members ............................................ 10

IV.  PLAINTIFFS' REQUEST FOR ATTORENYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARDS IS FAIR, REASONABLE, AND APPROPRIATE ........................................................................ 10

          1.    The Results Achieved .......................................................... 11

          2.    The Risk of Litigation .......................................................... 12

          3.    The Skill Required and Quality of Representation ..................... 12

          4.    The Contingent Nature of the Fee and Financial Burden Carried by Plaintiffs ........................................................................ 13

          5.    Awards in Similar Cases ....................................................... 14

          6.    Lodestar Cross Check .......................................................... 14

i

7.    The Court Should Award Reasonable Expenses to Plaintiffs ............ 16

8.    The Court Should Award Case Contribution Awards ........................ 16

V.    CONCLUSION ..................................................................................................... 17

**MOTION**

Samantha Gotta and Michael De Sena (collectively, "Plaintiffs") respectfully move the Court to grant Plaintiffs' Motion for Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Class Contribution Awards (the "Motion") pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement "Preliminary Approval Order"). (*See* ECF No. 77.)

The Parties have worked cooperatively to effectuate the Notice Plan as provided for in the Court's Preliminary Approval Order and Plaintiffs now move the Court to enter an order granting Final Approval of the proposed Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class. Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e), and it is supported by the below Memorandum of Points and Authorities; the Declaration of Michael McKay ("McKay Decl."); the Declaration of Eric Lechtzin ("Lechtzin Decl."); Declaration of American Legal Claim Services, LLC Regarding Due Diligence in Noticing ("American Legal Declaration") on behalf of the Settlement Administrator, American Legal Claim Services, LLC ("American Legal"), and supporting exhibits; the pleadings, records, and papers on file in this action; and all other matters properly before the Court.

Plaintiffs stand ready to provide any additional information or materials that the Court may require in connection with consideration of the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This unopposed Motion seeks final approval of the proposed Settlement of this action under the Employee Retirement Income Security Act ("ERISA"), as well as associated awards of Attorneys' Fees, Expenses, and Case Contribution Awards. The Settlement[1]

---

[1] The Settlement Agreement and its exhibits are attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion"). (*See* ECF No. 76.) Capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement.

would provide $2,000,000 in monetary relief to members of the Settlement Class, who were participants and beneficiaries in the Plan during the Class Period. Notice has been disseminated to the Settlement Class and there have been **no objections** to any aspect of the Settlement or the related applications to date. In addition, consistent with Department of Labor regulations pertaining to the release of claims by a qualified retirement plan, an independent fiduciary has been retained on behalf of the Plan to review and authorize the Settlement. The Independent Fiduciary's report, which will be filed before the Final Fairness Hearing, will provide an additional touchstone for the Court to assess the fairness and adequacy of the Settlement and the related applications. Moreover, distribution of the Settlement Fund would largely occur by way of automatic distributions into the Plan, resulting in a significant participation rate among members of the Settlement Class. In light of the meaningful, immediate consideration that would be provided by the Settlement and positive reaction of the Settlement Class, Plaintiffs respectfully submit the Settlement should be approved and the related applications granted.

On November 3, 2023, the Court entered the Preliminary Approval Order, which preliminarily approved the Settlement Agreement on behalf of the proposed Settlement Class, which is defined as:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between September 24, 2014, through November 3, 2023.

(*See* ECF No. 77). The Court determined that the Settlement Agreement—a hard-fought compromise resulting from adversarial, arm's length negotiations—was sufficiently fair, reasonable, and adequate to warrant provisional approval. To date, there have been **no objections** to any aspect of the Settlement Agreement following notice to the Settlement Class, and the terms of the Settlement Agreement and related applications are being reviewed and authorized by the independent fiduciary, which will be set forth in an opinion and report that will be delivered to counsel and filed with the Court prior to the Final Fairness Hearing. (*See* McKay Decl., at ¶ 13.) In light of the substantial benefits made

available by the Settlement, which Settlement Class members will receive without the need to file a claim, and in order to avoid the burden, expense, and uncertainty of continued litigation, Plaintiffs respectfully request that the Court grant final approval of the Settlement. Further, Class Counsel and Plaintiffs have spent considerable time, resources, and efforts on the litigation of this action, with no guarantee of recovery. Thus, Plaintiffs submit that awards of Attorneys' Fees, Expenses, and Class Contribution Awards in the amounts requested are appropriate in recognition of the efforts of Class Counsel and Plaintiffs in pursuing the Plan's claims.

## II.   BACKGROUND FACTS

The basic facts and procedural history of this action are well known to the Court and set forth in greater detail in Plaintiffs' Motion for Preliminary Approval. (ECF No. 77.)

### A.   The Settlement

#### 1.   The Settlement and Released Claims

Following considerable investigation, careful consideration of Plaintiffs' claims, completion of fact and expert discovery, certification of the class, a multi-year mediation process with Judge Morton Denlow (Retired) of JAMS serving as the mediator, more than three years of adversarial litigation, and with trial on the horizon, Judge Denlow made a mediator's proposal which the Parties' accepted and forms the basis of the Settlement. (*See* McKay Decl. at ¶ 12.) The release of claims provided in the Settlement is tailored to the claims pursued in the litigation and for which consideration would be furnished under the Settlement. (*See* Settlement Agreement, at ¶¶ 7-8.) In exchange for this release, Defendants have agreed to establish a common fund in the amount of $2,000,000. Consistent with the Preliminary Approval Order and Notice provided to the Class, the Settlement Fund has been and will continue to be used for the following purposes: (1) compensation to authorized Class Members; (2) any Attorneys' Fees and Expenses approved by the Court; (3) reasonable fees above $30,000 of the Independent Fiduciary in connection with its review of the Settlement Agreement; (4) all reasonable costs of administering the Settlement; and

(5) payment of Case Contribution Awards to Plaintiffs not to exceed $10,000 each, subject to Court approval. (*See* Settlement Agreement, ¶¶ 11-23.)

2.    Distribution of Settlement Funds to Class Members

The Settlement Fund will be distributed on a *pro rata* basis to members of the Settlement Class pursuant to the Plan of Allocation. The amount paid to each Class Member will be determined by the Plan of Allocation based on the average size of each Class Member's account during the Class Period. (*See* Class Notice, ¶ 7 (Plan of Allocation); *see also* McKay Decl. ¶ 15, Exhibit 1.) Members of the Settlement Class need not take any further action to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under the Plan of Allocation. (*See* Settlement Agreement, ¶¶ 26-27.) Class Members will automatically receive the benefit of the Agreement without having to submit any claim for benefits. (*Id.*)

**B.    Preliminary Approval of Class Notice**

On November 3, 2023, the Court granted preliminary approval of the proposed Settlement and approved the Notice Plan. (ECF No. 77.) In compliance with the Preliminary Approval Order, American Legal disseminated the Settlement Notice via electronic and/or first-class mail to more than 24,381 Class Members. (American Legal Decl., at ¶ 3-6.) They obtained forwarding addresses and updated contact information through the United States Post Office and "skip-tracing." (*Id.* ¶ 5.) American Legal re-mailed Notices to each individual for whom an updated address was discovered after the original Notice had been returned. (*Id.*) American Legal was able to confirm Notice was delivered to 99.04% of Class Members. (*Id.* ¶ 6.) Additionally, pursuant to the Preliminary Approval Order and the terms of the Settlement, American Legal established a website for the Settlement, which provided information about the case, relevant deadlines, and made available a number of pertinent documents, including the: (i) Class Action Complaint; (ii) Settlement Agreement; (iii) Frequently Asked Questions; (iv) Preliminary Approval Order; and (v) Class Notice. (*Id.* ¶ 8.) Further, in accordance with the Settlement Agreement and the Preliminary Approval

Order, American Legal established a toll-free telephone number, to which Class Members could direct questions about the Settlement. (*Id.* ¶ 9.) In addition to the foregoing, Class Counsel are informed Defendants' Counsel distributed Notice of the Settlement to the appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005. (McKay Decl., at ¶ 14 ; *see also* 28 U.S.C. §§ 1332(d), 1453, and 1711-1715.) American Legal has provided periodic updates to Class Counsel and Defense Counsel of expenditures made in connection with administration of the Settlement, and it has provided any and all information that was requested by the Parties or their counsel. (McKay Decl., at ¶ 13.)

Finally, neither Class Counsel nor American Legal have received any objections to the fairness, reasonableness, or adequacy of the Settlement or to the proposed Administrative Expenses, Attorneys' Fees and Costs, or Plaintiffs' Case Contribution Awards. (American Legal Decl., at ¶ 7; *see also* McKay Decl., at ¶ 13.) In fact, the opposite is true. Class Counsel has fielded hundreds of calls and emails from members of the Settlement Class inquiring about the litigation, Settlement, and claims process, and only received positive feedback from Settlement Class Members. (McKay Decl., at ¶ 11.)

### C.    The Settlement and Related Applications Have Been Reviewed and Authorized by an Independent Fiduciary on Behalf of the Plan

To further ensure that the Settlement is fair, reasonable, and adequate, Defendants retained an Independent Fiduciary, Fiduciary Counselor's, Inc., to review, and if appropriate, approve the Settlement on behalf of the Plan pursuant to Department of Labor Regulations pertaining to the release of litigation claims on behalf of a qualified retirement plan. (*See* Settlement at ¶¶ 18, 30). The Parties and their counsel provided the Independent Fiduciary sufficient information to enable the Independent Fiduciary to review and evaluate the Settlement, including the relevant pleadings and papers filed on the docket, certain discovery materials, confidential settlement documents, and any other materials requested. (*See* McKay Decl., at ¶ 16.) In addition, counsel for the Parties each have or will participate in meetings with the Independent Fiduciary to review certain matters related to the litigation and Settlement, and the Parties have and will answer all follow up questions from the

Independent Fiduciary. (*Id.*) The Independent Fiduciary will comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the Department of Labor, 68 Fed. Reg. 75,632, in making its determination. (*Id.*) As reflected in the report that will be filed with the Court, Plaintiffs anticipate the Independent Fiduciary will conclude that the Settlement and related applications are fair, reasonable, and adequate. (*Id.*)

## III.    THE SETTLEMENT MERITS FINAL APPROVAL

### A.    The Settlement is Fair, Reasonable, and Adequate

"The standard for reviewing class action settlements at the final approval stage is well settled. Rules 23(e)(2) states that the district court may only approve the settlement if 'it is fair, reasonable, and adequate.'" *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016) (citing Fed. R. Civ. P. 23). In determining whether a settlement meets these requirements, courts look to factors including the following:

> (1) the strength of plaintiffs' case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed, and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted). The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Cotter*, 193 F. Supp. 3d at 1035 (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re*

*Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

The Court has already preliminarily found that the Settlement is fair, reasonable, and adequate. (ECF No. 77.) The factors considered at final approval mirror those contemplated at preliminary approval. Having already preliminarily approved the fairness of the settlement, and because there have been no intervening circumstances that would alter that conclusion, the Court should find the same here. Additionally, notice of the settlement has been completed exactly in accordance with the Court's Preliminary Approval Order and all of the remaining relevant factors support final approval of the Settlement.

1.  The Strength of Plaintiffs' Case and the Risk, Expense, and Complexity of Further Litigation

Although Plaintiffs believe there is strong legal and factual support for their claims, there is inherent risk in continued litigation of these complex ERISA claims. "After the Court denied Defendants' motions to dismiss, a wide range of outcomes was possible, including uncertain damages awards even if Plaintiffs did ultimately prevail on their claims." *Johnson v. Fujitsu Tech. and Bus. of Am., Inc.*, 2018 WL 2183253, at *5 (N.D. Cal. 2018). When the Parties reached the Settlement, they had completed nearly all pretrial activities and were on the eve of trial. Trial presentations would rely heavily on competing expert testimony and likely would have given way to a complex appeal. Plaintiffs faced meaningful challenges in their ability to obtain a recovery on behalf of the Plan, even setting aside the additional complexity and delay of likely appeals, which strongly supports the final approval of the Settlement. *See Urakhchin v. Allianz Mgmt. of Am., L.P.*, 2018 WL 3000490, at *4 (C.D. Cal. July 30, 2018).

The Settlement is a product of an extensive arm's-length process in recognition of the risks that attended to further litigation. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the

"likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). This presumption of fairness ought to apply here because Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *See Tadepalli v. Uber Techs., Inc.*, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel.").

Further, the Settlement is a product of a mediator's proposal. Judge Denlow, a Mediator with JAMS, has significant experience in assessing ERISA disputes. The Parties only reached the Settlement after formal and informal mediation and follow-up discussions with the assistance of Judge Denlow – a process that spanned over a year. (*See* McKay Decl., at ¶ 3.) The Settlement further merits a presumption of fairness because it was proposed and endorsed by Judge Denlow, who is intimately familiar with the facts and issues in the case given that he worked with the Parties as a Mediator for over a year.

### 2.    The Settlement Recovery

Plaintiffs, with the assistance of their experts, have estimated realistic and supportable damages of roughly $5,600,000.[2] (McKay Decl., at ¶ 4.) While figures in this range are defensible, the likelihood of obtaining a complete recovery is fraught with risk and uncertainty. Indeed, if the case proceeded through trial, Defendants would likely challenge the loss calculation methodology and interest rates applied (not to mention challenges to causation and other elements of Plaintiffs' claims).

Plaintiffs and Class Counsel submit, based on their experience and expertise, that the Settlement—which provides $2,000,000, or approximately 35% of estimated supportable

---

[2] The estimated supportable damages opined on by Plaintiffs' expert witness have varied somewhat over the case as facts and information were produced, when challenged by Defendants' expert witnesses, and challenged by Defendants' counsel in depositions.

losses—is well within and significantly exceeds the accepted range of recovery in class action settlements across the country and in this district. *See Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of possible recovery); *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. 2015) (10.7% of total damages); *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1086331, at *4 (N.D. Cal. 2017) (overruling objections to settlement representing between 2.2% and 11.2% of possible damages).

### 3.   The Stage of Proceedings and Extent of Discovery Completed

"The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class Counsel's] familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). This factor strongly supports final approval. The Parties litigated the case for more than three years. They completed all fact discovery and expert witness discovery. The case was certified as a class action before a proposed settlement was reached. Defendant filed a partial summary judgment motion, which Plaintiffs did not oppose. The case settled on the eve of trial when the Parties agreed to a Mediator's proposal.

### 4.   The Experience and Views of Class Counsel

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular. They are of the opinion that the Settlement is fair and reasonable. (McKay Dec. ¶¶ 3, 5-7.) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043. This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that experience of counsel favored settlement approval).

Here, the Settlement Agreement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, adequately reflects the strength of the Parties' claims and defenses, is based on fulsome discovery and information gathered over a period of three years and provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits final approval.

### 5. The Reaction of Class Members

The reaction of the Settlement Class to the Settlement strongly supports final approval. Indeed, "[a] small number of objections at the time of the fairness hearing may raise a presumption that the settlement is favorable to the class." *Omnivision*, 559 F. Supp. 2d at 1043 (approving settlement where three of over 57,000 potential class members objected); *see also Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent). Notice of the Settlement with specific information about its material terms, as well as each of the associated applications, has been distributed to over 24,000 Settlement Class members and **zero objections** have been filed to date. Moreover, Class Counsel has fielded hundreds of calls and emails from members of the Settlement Class inquiring about the litigation, Settlement, and claims process, and only received positive feedback from Settlement Class Members. (McKay Dec. ¶ 13.)

## IV. PLAINTIFFS' REQUEST FOR ATTORENYS' FEES, EXPENSES, AND CASE CONTRIBUTION AWARDS IS FAIR, REAOSNABLE, AND APPROPRIATE

"It is well established that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Omnivision*, 559 F. Supp. 2d at 1046 (quoting *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) (internal quotation marks omitted)). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or

the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir.2010)). In the Ninth Circuit, the percentage method is the prevailing method by which district courts assess and award fees from a common fund in class action litigation. *See Omnivision*, 559 F. Supp. 2d at 1046. Regardless of the method used, the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances. *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990). Courts determining fee awards using the percentage method generally look to the following factors:

> (1) the results achieved;
>
> (2) the risk of litigation;
>
> (3) the skill required and the quality of work;
>
> (4) the contingent nature of the fee and the financial burden carried by the plaintiffs [and class counsel]; and
>
> (5) awards made in similar cases.

*See Omnivision*, 559 F. Supp. 2d at 1046.

### 1. The Results Achieved

"The overall result and benefit to the class from the litigation is a critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046 (finding recovery of 9% of possible damages to be substantial based on average recovery in similar litigation, such that requested fee award above benchmark was warranted). Plaintiffs have recovered $2,000,000 or approximately 35% of the estimated supportable damages. (McKay Decl., at ¶ 4.) The exemplary result achieved on behalf of the Plan and the Settlement Class supports the requested fee award. *Urakhchin v. Allianz Mgmt. of Am., L.P.*, 2018 WL 8334858, at *5 (C.D. Cal. July 30, 2018) ("[T]he degree of success obtained in this settlement weighs in favor of finding the fee request reasonable."); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding fair and adequate an ERISA settlement representing one-sixth, or 16 percent, of recovery); *Reyes v. Bakery & Confectionery Union*

& *Indus. Int'l Pension Fund*, 2017 WL 6623031, at *6 (N.D. Cal. Dec. 28, 2017) (approving ERISA settlement recovery of 25% of possible damages).

### 2.  The Risk of Litigation

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *See Omnivision*, 559 F. Supp. 2d at 1046 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)). This factor strongly supports final approval too. It is rare for ERISA breach of fiduciary duty class actions to be tried to verdict. However, recently participants in New York University retirement plans, alleging claims like those of Plaintiffs here, lost their case following a lengthy bench trial. Attorneys who represented the New York University retirement plans also represent Defendants here. The New York University verdict provides strong support for Plaintiffs' decision to accept Defendants' offer of $2,000,000, even though Plaintiffs believe in the merit of their case. Additionally, any successful trial would almost certainly be followed by an appeal that would result in additional risk and delay to the Settlement Class. The Settlement represents a reasonable compromise that alleviates the risks associated with further litigation.

### 2.  The Skill Required and the Quality of Representation

ERISA claims such as Plaintiffs' deal with a complex area of the law that necessitates fierce litigation on highly complicated and financially sophisticated topics. *See Toumajian v. Frailey*, 135 F.3d 648, 650 (9th Cir. 1998) ("Once again the mysteries of the Employee Retirement Income Security Act of 1974 ("ERISA")—a statute intended to provide a system of uniformity and simplicity in the complex regulatory field of employee benefits— provide added complexity in this action."). The litigation of such claims frequently relies on the testimony of competing experts on liability issues and financial losses, and Class Counsel's understanding of ERISA's complex regulatory framework enabled them to work effectively with the experts they engaged in order to effectively prepare the case.

Class Counsel have extensive experience litigating ERISA fiduciary breach cases. (McKay Decl., at ¶¶ 5-6.) Throughout the pendency of the case, Class Counsel have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the action, filing detailed pleadings, briefing several motions, engaging in the discovery process, retaining multiple industry experts to develop theories and support Plaintiffs' allegations, and preparing for trial. (*Id.*) Tens of thousands of pages of documents were investigated and reviewed during the discovery process and in preparation for litigation. (*Id.*) The representation of the Class was of the highest quality. In addition, Defendants were represented by some of the most formidable and qualified ERISA practitioners in the country. Class Counsel was still able to secure a $2,000,000 Settlement. Accordingly, achieving a favorable Settlement against such well-represented adversaries is a testament to the skill and quality of Class Counsel's representation of the Class.

3.    The Contingent Nature of the Fee and the Financial Burden Carried by Plaintiffs

Class Counsel prosecuted the class action on a contingent basis and advanced all associated costs with no guaranty of compensation in the event the litigation did not result in a recovery for the Settlement Class. (McKay Decl. ¶ 18.) "The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Urakhchin*, 2018 WL 8334858, at *6 (citing cases). Class Counsel have devoted in excess of 1,635 hours over three years to this litigation. (McKay Decl., at ¶ 17; Lechtzin Decl. ¶ 8.) Class Counsel have yet to receive any compensation for the efforts expended in this case. Additionally, Class Counsel advanced $117,620.00 of expenses in the interest of providing effective representation to the Settlement Class over three years. (McKay Decl., at ¶ 18; Lechtzin Decl. ¶ 9.) Class Counsel's risk of nonpayment in light of

these efforts merits the requested fee award too. *See Omnivision*, 559 F. Supp. 2d at 1047 (awarding requested fees and expenses where counsel had devoted 7,500 hours and advanced in excess of $500,000 in expenses in securities litigation lasting three years).

### 4.    Awards in Similar Cases

Although the Ninth Circuit has established a general benchmark of 25% in contingent fee litigation, District Courts throughout the Ninth Circuit have noted that "in most common fund cases, the award exceeds that benchmark." *See Omnivision*, 559 F. Supp. 2d at 1047. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). In ERISA litigation of this kind, one-third is the most common percentage awarded. *See*, *e.g.*, *Garthwait v. Eversource*, No. 3:20-cv-00902-JCH, ECF No. 205 (D. Conn.) (awarding one-third of common fund as attorneys' fees); *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (same); *Spano v. Boeing Co.*, 2016 WL 3791123, at *2 (S.D. Ill. Mar. 31, 2016) (same); *Main v. American Airlines, Inc.*, Case No. 4:16-cv-00473, ECF No. 138 (N.D. Tex. Feb. 21, 2018) (same). *Moon v. E.I. du Pont de Nemours and Co.*, No. 19-cv-01856 (D. Del. Feb. 03, 2023) (finding one-third of common fund attorney fee award "unremarkable" in ERSIA breach of fiduciary duty class settlement). The requested one-third is commensurate with the risk assumed by Class Counsel and awards in similar cases under analogous circumstances (*e.g.*, procedural posture at time of resolution, amount of time spent and expenses incurred, etc.). It also bears noting that the Independent Fiduciary will review the fee request and Class Counsel expect the Independent Fiduciary will determine that the request is reasonable in light of the efforts expended by Class Counsel in prosecuting the litigation. Likewise, all members of the Settlement Class received notice of the anticipated request for attorneys' fees and no member of the Settlement Class objected to the anticipated request.

### 5.    Lodestar Cross-Check

"As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under

the lodestar analysis." *See Omnivision*, 559 F. Supp. 2d at 1048. Under the lodestar method, the "lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request to compensate Class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016). A reasonable hourly rate "must be based on the 'experience, skill, and reputation of the attorney requesting fees' as well as 'the rate prevailing in the community for similar work performed by [comparable] attorneys . . . .'" *Rodman v. Safeway Inc.*, 2018 WL 4030558, at *6 (N.D. Cal. Aug. 23, 2018) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *amended by* 808 F.2d 1373 (9th Cir. 1987)).[3]

Though the lodestar figure is "presumptively reasonable," *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988), it is well established that a court "may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).

Calculations under lodestar method, taking into consideration any positive multipliers, confirm that a fee award of one-third is reasonable. Indeed, Class Counsel have

---

[3] The hourly rates charged by Class Counsel are in line with hourly rates found to be reasonable by courts in the Ninth Circuit in similar ERISA litigation, even several years ago. *See Urakhchin*, 2018 WL 8334858, at *6 (finding—in an order issued six years ago— fee award to be supported by lodestar cross-check based on billing rates between $600 and $825 per hour for attorneys with more than ten years of experience, $325 to $575 per hour for attorneys with 10 or fewer years of experience, and $250 per hours for paralegals and clerks).

spent more than 1,635 hours prosecuting this case (excluding the additional time anticipated to be spent on administering the Settlement and addressing any inquiries by members of the Settlement Class following final approval). (McKay Decl., at ¶ 17; Lechtzin Decl. ¶ 8.) This implies a lodestar figure of $892,282.50. (*See id.*) Even before any additional post-approval time is considered, an award of one-third of the Settlement Fund would represent less than Class Counsel's lodestar. In complex financial litigation such as this, courts have often approved lodestar multipliers ranging between 1 and 4. *See In re Chiron Corp. Secs. Litig.*, 2007 WL 4249902, *17–18 (N.D. Cal. Nov. 30, 2007) (surveying fee awards). Here, Class Counsel's lodestar exceeds the requested fee award. Thus, under all of the circumstances, a lodestar cross-check confirms the reasonableness of the fee request.

### 6.    The Court Should Award the Requested Reasonable Expenses to Plaintiffs

Plaintiffs seeks an award of $117,620 for reasonable expenses incurred in this case. (McKay Decl., at ¶ 18; Lechtzin Decl. ¶ 9.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048. Such costs typically include "photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses." *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018). Class Counsel's expenses were all reasonably necessary to the conduct of the litigation. The most significant expenses are expert witness fees, without which the case could not have been most effectively prepared. (McKay Decl., at ¶ 18; Lechtzin Decl. ¶¶ 8-11.) All expenses for which reimbursement is sought were necessary for the prosecution of this litigation. (*Id.*)

### 7.    The Court Should Award the Requested Case Contribution Awards

Case contribution "awards that are intended to compensate class Representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). Such awards are "intended to compensate class representatives for work done on behalf of the

class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiffs have actively participated in the litigation and assisted Class Counsel in all facets of the litigation. (Lechtzin Decl. ¶ 11.) Consistent with awards regularly granted under similar circumstances, Plaintiffs should be compensated for their work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this Action. *See Johnson*, 2018 WL 2183253, at *8. Accordingly, Plaintiffs request that the Court approve a contribution award in the amount of $10,000 to each Plaintiff.

## VI. CONCLUSION

For the foregoing reasons, those already identified in Plaintiffs' Unopposed Motion for Preliminary Approval and the Court's Preliminary Approval Order, and all others appearing on the record, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Final Approval of the Settlement, Attorneys' Fees, Expenses, and Class Contribution Awards.[4]

Dated: February 9, 2024

/s/ *Michael McKay*
Michael McKay (023354)
**MCKAY LAW, LLC**
5635 N. Scottsdale Road, Suite 117
Scottsdale, Arizona 85250
Telephone: 480-681-7000
Facsimile: 480-348-3999
Email: mmckay@mckaylaw.us

Marc H. Edelson (pro hac vice)
Eric Lechtzin (pro hac vice)
**EDELSON LECHTZIN, LLP**
411 S. State Street, Suite N-300
Newtown, Pennsylvania 18940

---

[4] If helpful to the Court, Plaintiffs would be pleased to provide a Word version of the proposed Final Approval Order, filed as an exhibit to the Settlement Agreement.

Telephone: (215) 867-2399
Facsimile: (267) 685-0676
Email: medelson@edelson-law.com
Email: elechtzin@edelson-law.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I certify that on this 9th day of February, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registered users.

*/s/ Michael McKay*